The next case on the calendar is United States v. West Lusitian. Good morning, your honors. May it please the court, my name is Donna Aldea and I represent Dr. Marina Wasilisian. Your honors, Marina Wasilisian was convicted of a crime under a prosecution where the government failed to prove that there was notice as was required by the statute and failed to prove that there was a mens rea of knowingly that is read into the statute. Additionally, she was convicted based on a statute that was unconstitutionally vague as applied to the facts of her case. So for all of those reasons, this conviction should not be permitted to stand. Taking these in turn and without belaboring the points that are already in my brief that I know the court is familiar with, with respect to the notice requirement, I just want to highlight the government's brief. The government on this appeal has taken a position that is entirely diametrically opposed to the position that it conceded below. Before the trial court, in response to Defendant's Rule 29 motion, the government admitted that there were two ways to prove notice, which it recognized that it had to prove. One way was conspicuous posting. The other way was actual notice. The government has conceded, even in this brief, in footnote 8 of its brief, that there was no actual notice here. In other words, Dr. Wasilishin was not told that she was committing a crime or would be arrested if she ceased raising her voice or speaking loudly as it's alleged that she did. And the government now contends for the first time on this appeal that the posted conspicuous notice is also not required. So that argument really should be deemed forfeited. But more than that, the argument is substantively wrong. The government's whole argument on this point is founded on a case, United States v. Strong, that when we look at actually contradicts the government's holding. In Strong, the court specifically noted it dealt with a question of whether a statute was conspicuously posted. And it specifically noted that there is a distinction between the conspicuous posting that is required by the enabling statute under United States Code 1315 and a separate regulatory provision in a separate regulation that requires that posting be specifically done at the front doors of every building. We are not alleging, and Dr. Wasilishin never alleged, that the defect here was a failure to post the notice at the front door of the entrance. That's not what she's claiming. So it has nothing to do with this regulation. Instead, what she is claiming is far more fundamental, that substantively the notice was not conspicuous. And on that front — But aren't you still reading into the regulation that she was convicted of violating an element that's not in that regulation? Well, but, Your Honor, the problem is that the authority for the regulation to criminalize the conduct, the authority for the executive to legislate, in other words, criminalize the conduct, comes from 40 U.S.C. 1315. And that statute, every circuit court has held, so strong in the First Circuit but before that, the Tenth Circuit, the Ninth Circuit, the Fifth Circuit, the Fourth Circuit, all of these circuits have held that that statute does, in fact, have this requirement in it. And one of the fundamentally — But where they found actual notice, they don't really have to construe the statute quite so closely. And I think there's a sound argument to be made that the posting provision and the efficacy of the posting, whether it's adequately conspicuous, is independent, that it's really intended, as it's framed in the statute, to constrain what kind of regulations. So there aren't secret regulations that no one would have any notion about. So the GSA requires you or is required to post. But it can have regulations, and they can be enforced. Because it would seem odd to say that a common sense kind of, you can't, as happened in Strong, make a mess of the restroom and create a nuisance for every other user of the building, would need to be posted and written in great detail outside the building or right at the entrance in order to be enforced, to limit, right? I completely agree with Your Honor. So if they're independent, then I don't really understand your argument that the statute requires the publication be adequately conspicuous in order for there to be any consequences of violating those rules. So, Your Honor, it has always been recognized by all of these circuit courts that what is required fundamentally is notice. And that notice can occur in two different ways, as the government actually conceded before the lower court, before the trial court. So it can either be done through conspicuous posting, that's number one, or number two is through actual notice. You would say, if Dr. — and we can have debates about the facts and who yelled louder and so on, but you would say that Dr. Wasilishin was not on notice that, at the entry to a federal courthouse building, she shouldn't be yelling at the court security officer. Yes, Your Honor. And with divorce from the facts, I'm saying that that's true. And then, you know, I'll get into the factual portion and the vagueness portion as well. But yes, Your Honor, I am saying that. And I'm not alone in saying that. Certainly, the court said that in Strakov. The court said that in Bishel. And in Bishel, actually, if Your Honor's analysis were the analysis that was used in United States v. Bishel, then there would have been no need to go into the conspicuous posting question in the first place. It would have been superfluous. In Bishel, we had a gentleman who had chained himself to the entryways of the courthouse. Correct, Your Honor. And it's nice that there are warnings and so on, but, you know, one can question whether the statute actually requires that in order to prosecute. I mean, for me, part of my concern is why was this a misdemeanor? Why was this prosecuted? And it couldn't have been a violation of somewhat lower level because a misdemeanor is a criminal record. It's a serious matter. Correct, Your Honor. Correct. Well, Your Honor, I mean, just going back to the legal portion of it, though, there really is no precedent, though, for this position, which is this novel position that the government has taken. And before I address that a little bit more in detail substantively, just procedurally, it's a very unfair position for the government to have, for the first time on appeal, articulated this position, this argument, that is contrary to what the government argued below. Because I can quote you from what the government actually stated in the Rule 29 motion, which was, we agree that there is this requirement of notice, and that requirement can be satisfied in two ways. It can either be satisfied by conspicuous posting, which the government relied on, or by actual notice. Having conceded that, that was the decision of the district court below. That was the basis for its verdict. It held that there was conspicuous posting. That was the basis for the district court decision afterwards, which similarly found the same. So the only issue that had ever been presented was the question of, is the posting behind glass, and this is actually evident in the appendix on page 162, this is the picture. Their own CSO, their own security officer specifically testified that from seven and a half feet away, it was impossible for a person coming into that building who had no access to behind the security counter where this was posted, behind glass, to read the substantive text. And so now substantively, Your Honor, to your question, in United States v. Strong, actually the First Circuit, and this is the sole case that the government relies on that doesn't hold what the government says, the sole case specifically talks about the fact, it says, contrary to the dissent's claim, our conclusion that the posting was conspicuous for someone in Strong's position is not at odds with Bishel or Stracoff. And then it says that the posting requires, it doesn't require posting outside the building entrance, which is a formality that is found in a separate regulation, but it does require conspicuous posting. And that's why the whole Strong decision is broken down really into two sections. Section A of that decision talks about the question specifically, it's entitled specifically, the statute's conspicuous posting requirement was met. So even from the title of the analysis of the section in Strong, which is the sole case on which the government relies, the First Circuit finds that there is a conspicuous posting requirement in this enabling statute. You're over time already. Yes, Your Honor. I wanted to ask if you could address the mens rea argument briefly as you make two arguments before us today. Yes, Your Honor. So the mens rea argument, actually the problem with the mens rea is the mens rea has to be read into the statute. And so in order to constitute a guilty mind, a mens rea, what the Second Circuit, what this court has held in United States versus Bronx Reptiles, is that to suffice for criminal culpability, knowledge must be, quote, extensive enough to attribute to the knower a guilty mind or knowledge that he or she is performing a wrongful act. In contrast to cases like Strong, where a person smeared feces over the building inside a government bathroom, in contrast to cases like, I'm not going to be able to pronounce this one, Zagrovayaska, which is cited in the government's brief, where the defendant in that case actually threatened to kill the security guard and threw something at the security guard physically, where for mens rea, as Your Honor was saying, we can certainly infer that that conduct was wrongful because it was clear that it was a wrongful act. Here, the mens rea cannot be inferred as being knowingly because all Dr. Wasilishin did, according to the testimony viewed in the light most favorable to the people, is that she, I'm sorry, to the government, is that she raised her voice to the same or lower level than the decibel level of the security guards with whom she was arguing. And so when we look at that. Did she bump him? No, Your Honor. And that is actually apparent from the video. So even though it is true that we give deference to the findings of fact below, this court certainly is free to look at the video. And the security officer actually testified at trial that he believed that she had bumped him. The district court found that it was ambiguous whether she had, and the video did. The magistrate judge, help me if I'm misunderstanding the record, but the magistrate judge credited the fact that your client stepped toward the CSO, getting extremely close to him, if not touching him. So did not go make a finding of fact that there was an actual touch. But the magistrate judge also found that she was told to calm down. She kept shouting. She testified that she wasn't shouting, and the magistrate discredited that testimony and believed the officers. Correct, Your Honor. So, again, because it's a loud or unusual noise with respect to mens rea, for her to know that her conduct was wrongful, there would need to be some sort of knowledge as to what loud is too loud. In other words, what loud is criminal. Loud enough to be heard is clearly not loud. The CSOs themselves. If it's a general intent crime, we say, does the person know that they're doing the thing that is prohibited? So the general way I would say if this were a criminal law class, did she know she was shouting? Right. Are you saying she didn't know she was shouting? Yes, Your Honor, I am. And I'm saying she didn't know she was shouting because the level, the decibel level. So, again, what we're criminalizing in this vague statute, which is actually the other point of all this, but what we're criminalizing is the loud or unusual noise. She did not raise her noise beyond the level of the CSOs and testified that she only raised it to that level to meet their level. And, in fact, the district court judge found that that was probably true, that they may have exceeded, in fact, her volume. So what? Sorry, Your Honor. So what? So they couldn't. The CSO was not on trial. Correct, Your Honor. But the CSOs could not even agree as to whether when she put her bag down it made a loud or unusual noise. One said it did. One said it didn't. So the problem with this is and as. . . It's not just the bag, the noise that we're considering. It's not just the bag. And as far as the stepping forward, the video shows, actually it shows, that this CSO came out from behind his desk. He towered over my client. He came out from behind his desk, was literally advancing on her, pointing in her face, inches from her nose. And as she was stepping back, she was literally being backed into a corner, backed into the doorway. And the time when it said that she bumped him, she just literally stood forward to stand her ground. There is no context in which that should be deemed a nuisance or that should be deemed improper, especially when these CSOs were denying her access to a public building, to a public space where she was entitled to go, and she had never refused to comply with their directives to give identification or anything else. Let's assume she didn't bump him. How close did she get to him? She. . . Well, he actually got. . . No, no. My question, not your question. How close did she get to him? She was going forward. She got very close. She got within inches of him, certainly, within a couple of inches of him. What's the number of inches that is too close or not too close? So here's the other problem. The other problem is that all of this leads into the problem that this statute was unconstitutionally vague as applied because it allowed for the arbitrary and discriminatory application of these terms. She was convicted for making a loud or unusual noise, which are vague terms, that were not subject to any definition. If the CSOs cannot agree whether the noises were loud or whether the noises were not loud, if her volume did not exceed the volume of the officers that she was speaking to, if she did not step closer to the CSO than he had initially stepped to her, then the problem is that it's arbitrary. I don't understand that last comment at all. He had advanced. . . I'm talking about what she did, not what he did. So let's say he's in the vicinity, and then for whatever reason at some point she moves towards him, right? The video will show that, right? Correct. So how close is she entitled to get to him, do you think? I think she could come so close that it's almost bumping. I think that it is a matter. . . The reasonableness of that or the question of whether it is vague as applied would depend on the context. The question is as a person how close I could get to you, maybe bump you, but let's say I don't and that's okay. I understand Your Honor's question. I guess the difficulty I'm having with it conceptually is that when you get close to me, I get close to you. So the problem I have with it is the CSO was already bearing down on her. He was already within inches of her face. He was pointing within inches of her face. And so when she was being backed into a corner and ultimately stepped up, that was not any closer than he had already been. So we have to evaluate it contextually. And then the last part of this vagueness part, I realize my time is up. You're saying he bumped her, if anything. If anything, he advanced upon her, and then she just stepped forward to stand her ground. So she didn't get any closer than he had already been at a prior point. She stopped backing up is basically what happened, which she honestly should have the right to do in this context. But beyond that, and the last point that I'm going to make on vagueness, is that the reason that we know that this statute was arbitrarily and discriminatorily applied and the reason that we know also that she didn't have the mens rea and she didn't have the knowledge is that at the end of all of this, when the CSO finally, after she steps forward, he grabs her, he puts her hands behind her back, he slams her against a counter, she says, why am I being arrested? Which shows that she had no knowledge. Not only had she not seen the regulation, not only was it not conspicuously posted, not only was she not told, she didn't know she had done anything wrong. She didn't know what she had done. And even more telling than that, the answer to that question by the CSO was not because you were making a loud and unusual noise or disturbance in violation of the ordinance. The answer is because you were being a bitch. That was the answer he gave her. And that shows that this is really a post hoc justification for an arbitrary and discriminatory enforcement, in fact, of the statute in this case. And notably, the second CSO, upon clarifying that, said that she had committed disorderly conduct, which is also not what she was being charged with here. Are you going to reserve your hand? Yes, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, Michael Perry of the United States. I was trial counsel at the bench counsel in this matter. The first point I want to make, I would have made in a sub-reply if I had been able to file one, is on this waiver point. The Supreme Court has clearly held the following. This is Musacchio v. United States, 136, Supreme Court, 2016, held that when a jury instruction, I'm not quoting it, but I'm summarizing it, when a jury instruction sets forth all the elements of a charged crime and incorrectly adds one more element, a sufficiency challenge should be assessed against the elements of the charged crime, not against the erroneously heightened jury instruction. And this Court, in United States v. Fassen, F-A-C-E-N, 812F, 3rd, 280, also from 2016, Second Circuit, said, and this is a quote, as the Supreme Court has recently held, the sufficiency of the evidence to support a conviction is measured against the actual elements of the offense and not against an expanded list of elements contained in an erroneous jury instruction, unquote. So here we don't have a jury instruction, but essentially we have the same situation where the magistrate judge believed that there was an extra element to this offense, government did not object, defense did not object, and now we're on appeal and this Court, in compliance with Musacchio and Fassen, should not incorporate this heightened element that's not actually an element. And also on the fairness point that defense counsel raised, Musacchio addresses that by saying that a sufficiency review, in essence, focuses on the minimum due process requirements that somebody is due. And so if there's an extra burden that the government has to show to prove a crime beyond a reasonable doubt, that hasn't harmed the defendant. Basically, the government proved something that they didn't have to prove. And in this case, I don't think there's any conceivable way in which the government proving notice at trial somehow harmed the defendant. It made it harder for the government to get a conviction, and we did anyway. Separate and apart from that, which shows that that argument was not waived, Your Honors, is the magistrate judge, having heard all of the testimony and seen the exhibits in the video, held, found, as a factual finding, that the notice was conspicuously posted. Well, I'm having trouble understanding how that could possibly be, given that it was in a glass case, you know, behind, in small print, and so on. And we have these other cases in which, you know, the court officers or the GSA put out sandwich boards with, you know, large print notices outside the courthouse. I mean, do you believe these were legible from where she stood? The testimony was that the title of the document, which says Rules and Regulations Governing Conduct on Federal Property, was legible. It's big enough font. The title, but not the rules, not themselves. I mean, so how would your title give notice of what behavior is appropriate? Because it's posted what the statute requires. Again, my position is it's not an element. But what the statute says is it must be posted in a conspicuous place, not that every word in the document must be conspicuous. I don't think that the statute should lend itself to a font, you know, decision on whether, you know, somebody with a certain type of vision can see, you know, every letter. No one could read that. No one could really read it. I mean, I think there's a legitimate argument also that the behavior that was engaged in here, you know, one would reasonably know that that was inappropriate. Whether it's criminal, though, is something else. Well, but it's not our position to decide whether it's criminal. The judge found that the elements were satisfied. And so, you know, if you're saying that the government could have exercised discretion not to charge it, that's not before this Court. That would be an appropriate sort of, you know, appellate nullification in a sense. And I don't think it's appropriate to get into, you know, all of the plea negotiations and so forth, because counsel wasn't even there. This is a new appellate counsel. Suffice it to say that there is a criminal statute and the elements were satisfied. And then going back to this issue anyway of the requirement, there's no question that 1315 does require posting.  And in the Irby case, Fourth Circuit's an unpublished case, it addresses pretty clearly the history of this statute and explains that the predecessor statute, which is 40 U.S.C. 318a, lowercase a, it did condition criminal liability on satisfaction of the posting requirement. There were two additional words in that statute, provided that, which were sandwiched in between the granting of authority to make these regulations and the posting requirement. That statute was changed in 2002 and the words were removed. So clearly Congress knew how to make this an element of the offense if they wanted to. The Strakoff case that defense counsel relies on so heavily was decided in 1983 when that prior statute governed. So when Strakoff came down, that statute did govern. Bickshall was decided admittedly after that. But that decision by the Ninth Circuit seemed to assume that the statute required that as an element, even though it actually did not. And then, Your Honor, the videos was brought up. I encourage you to watch the video if you have not. It is clear that if the officer was not actually contacted by the defendant, clearly at a minimum their clothes were touching. I mean, there's no daylight between them. She steps forward aggressively and either makes physical contact or at least brushes against him. My viewing of the video suggested that Officer Canfield was advancing towards her and encroaching on her space, not that she was the aggressor. And, in fact, I'm troubled by his participation in here and the explanation that he gave about why she was being arrested, which suggests to me that it wasn't simply for raising her voice since his voice was at the same level. Well, it wasn't simply for raising the voice because she also slammed down the purse and she invaded. She got right into his face. Clearly, Your Honors, if you've seen the video, he does advance toward her. He's putting his finger out and they're arguing. You can't hear what's being said. You don't have a sense of the volume because there's no volume on the video. But you can tell they're arguing back and forth. He's reprimanded, but he doesn't develop a criminal record as a result of his behavior. But, Your Honors, all of this was before the magistrate judge. This goes to their credibility. The magistrate judge understood that he'd been reprimanded. Of course, it's disturbing that a law enforcement officer would say that to a citizen. That's not appropriate in any sense. The government's not defending that. He was rightly reprimanded for doing so. But, again, by the time he made that comment, the crime had been committed. The statute had been satisfied. And just because she is, after committing a crime, is called a derogatory term that's inappropriate in any discourse of any sort, doesn't mean that she didn't commit an offense or that she should somehow get a pass on the $50 ticket that she received. Can you address the Menzraya argument? And I take your adversary's argument to be that because of the nature of this offense, making an inappropriate noise, acting disorderly, being a nuisance, and the conduct she is alleged to have engaged in, she wouldn't have known it was wrongful, and that somehow means that Menzraya has not been satisfied. Right, Your Honor. I mean, I think there's no basis to make this into a specific intent offense where she had to know the wrongfulness of her conduct. Clearly, she knew about what she was doing. She knew she slammed her purse down. She knew she stepped forward into the officer's face and was probably centimeters away from his nose. And she knew she was shouting. Defense counsel keeps referencing her testimony that she matched the officer's. That wasn't necessarily their testimony. The light most favorable to the government, which this court must examine the evidence under, was that she came in and slammed her purse down and almost immediately started shouting at them and yelling that she pays their salary, they work for her, things like this. Entirely unreasonable, right? She just wants to go get the forms for her, her IRS forms, as she's done every year in the past, which means walking past the security gate to this kiosk where they can be found. She didn't need an appointment with the IRS. Well, the testimony was that she needed an appointment with the IRS to go back to the IRS, and the testimony was that that had changed since the year before. The testimony was that she came in, she didn't immediately ask for forms. She said, I need to go to the IRS. And that's when they said, I'm sorry, you can't, you need an appointment. And basically she went nuts. To your point, Your Honors, I think everyone here probably has been frustrated by government bureaucracy in some form or fashion at some point in our lives, but that doesn't justify carrying on in the way that she did. And again, the testimony in the light most favorable to the government, she was yelling so loudly that 45 feet away around the corner that they could be heard. One other final point. Defense repeatedly argues in the briefing that this didn't bother other people in the building, other people didn't notice, things like that. It bothered the CSOs. They noticed. All of their attention had to focus on her. Their job is to protect the federal building and to enforce the rules. And as it turned out, there is no evidence that she was connected with the protesters that were happening outside. But if you examine the context of it from the CSO's perspective, they don't know that. All they know is that somebody is carrying on very loudly, sucking up all of their attention and energy and making a disturbance, and she got a $50 ticket for it and should be required to pay it. Thank you. Your Honors, three short points in response. First, with respect to the waiver argument, the record has just been really misrepresented by the government, completely misrepresented. The government stated with respect to the waiver that this was the government simply, the magistrate used the wrong standard, and that the government simply, quote, did not object. That's not what happened here. What happened here, and I'm going to quote you from A138 of the appendix. This is the government, I guess this AUSA's argument here. Mr. Perdicone, who was the defense attorney, harped on the fact on the issue of notice. Contrary to his argument, there are actually two different and independent ways that an individual in her situation can be put on notice. One is by being warned orally. There are cases the government acknowledges that have found that an oral warning suffices. The other way, which both do not need to be satisfied, is a conspicuous posting. In this case, that is clearly satisfied. So this AUSA said this on the record. This was not simply a case where a wrong standard was used. The government sat silent. This is a true, it's not just a waiver. It is the government taking a contrary position below, acknowledging that notice was required and could be satisfied either by actual notice, which they conceded did not exist below and continue to concede here that it does not exist, or by conspicuous posting. On the second point, on conspicuous posting, in this case to say that there is some ambiguity in the record, if there is an ambiguity as to what conspicuous means statutorily, then the rule of lenity would require that it be interpreted in defendant's favor. If there is no ambiguity, which I don't think there is based on the case. How was your client prejudiced by the addition of an additional element to be shown to the magistrate? She wasn't prejudiced by an additional element. In fact, that was the standard. What I'm saying is the government is now saying that the posting does not need to be conspicuous at all for criminal liability to attach, and that is simply not correct. And it's not the position they took below. On the conspicuous posting, not only is it clear, as the Court has noted Which is the exact conflict, precisely? The precise conflict. The words that he used versus the words that it's using here. It's the whole position. The whole position. I want to know what he What he just stated on oral argument here is he said that this does not constitute a waiver because it is similar to cases where a judge erroneously in a jury trial gave a jury instruction that added an element, which is actually not on point because that's not what happened here. I didn't say any of that in the transcript. But then, right, oh, in the transcript. What I just read to you from the transcript, here he said the government, the magistrate used the wrong standard. And the quote that I wrote down from his oral argument is he said, the government did not object. And I'm saying that's not what happened. So he, okay, got it. What happened is the portion I read to you were actually this AUSA's words where in response to the Rule 29 motion, he actually argued Yeah, no, I get that. There's nothing wrong with that. No, no, this is all correct. What he argued below was correct in acknowledging that there is a requirement of notice. The only part we disagreed on Because he says at the conclusion of that paragraph, I think the notice requirement is clearly satisfied. Correct, because of conspicuous posting. But I suppose that's not inconsistent with having taken the position earlier that there is none, but to the extent the court is construing the statute as imposing one, we've met it. But except the problem is that he never took the position below that there was no notice requirement. He never did that below. He never did that beforehand. So it's not an alternative argument. This was the only argument. And on the conspicuous posting, on the conspicuous posting, the only part that I want to respond to that portion of it, he said that here having it behind a bulletin board is sufficient or is conspicuous even if you can't read it. The first point factually is there actually is testimony Those are yours words. I don't think that's exactly what he said. I believe that it is. He said some parts of it were bigger than others. You could read the title of it. Yeah. Correct. Now, the government's witnesses at trial actually testified on page A-105 of the appendix. There is direct testimony where the CSO testified that you cannot read the words of the regulation from where Ms. Wassilish and Dr. Wassilish or any other member of the public would be standing because of where it was posted. All you could read was the title. Now, going to what conspicuous posting is required, I'm going to read not from Bishel, not from Stracoff, but from the government's own case, Strong, which is the one case they rely on, as to what conspicuous posting requires. It requires posting in a conspicuous place where you can, quote, reasonably impart the information to the specific defendant concerning their violations on the fact of their case. In other words, it's not enough to see that there are rules or regulations, which is all you could read here. It needs to impart knowledge. In other words, you could read the actual text of the regulation that she is deemed to have violated. And everyone agrees that was not satisfied here. And the last point... So it has to say you can't come up to the court officer and almost bump him. It has to say that? Well, no, Your Honor. It just has to have the text of the regulation that she is deemed to have violated at a place where she can actually read it. In other words, the distance has to be... So let's say she's at that place and she's reading it. Does it have to say that she can't come this close to the court? No, Your Honor. We're not challenging the text of the regulations themselves under the notice requirement. What we're saying is that the regulation to be conspicuously posted, which is required here... So what if it had been the Fifth Circuit's gun case and she came in with a gun to the federal building and that were not... And there was no conspicuous posting saying you can't do that. It was a registered gun and so on. Could she be arrested for coming into the building with a gun? She could be... Well, in New York, she could certainly be arrested for criminal possession of a weapon under both state and federal law, I think. But could she be arrested for a violation of this particular regulation? I would have to say probably not if it wasn't conspicuously posted, in other words, at a place where it can be read. And that's actually exactly the facts of Strackhoff. But I'm having a little trouble understanding what this notice is going to look like. I mean, you could paper the whole downstairs of the entryway to the courthouse with rules about things that you can't do, and there's some measure of reasonableness... Well, Your Honor, the regulations themselves all fit. All that's required is the posting of this document. It's one piece of paper. That's it. So no-one's saying that anything more than this one piece of paper is required. However, in Strong, for instance, which, again, is the government's case, what is required in order to satisfy that, or in Bishel or in Strackhoff or in other cases, is it needs to be posted at eye level at a place where a person can read it. We're not claiming, we're not relying on the separate regulation that says it has to be posted formalistically at every single entry of the building. That's a regulation. That's not the enabling statute. That is not required. What is required is that a person in her position be able to see it. And where it was posted... I think the questions are going to... I mean, you make two arguments. I get it. You say you just need to post the regulations in a conspicuous... They have to be conspicuously posted, and that is essentially an element of this regulation. You can't convict anyone for violating it if that posting requirement is not satisfied. But your other argument is that this regulation itself is void as applied to your client. And that one does seem to suggest that if you wanted to have the regulation apply in circumstances like your client's, where somebody is speaking very loudly to be heard 45 feet away and approaching someone very close, then you need to be more specific in the regulation itself, put more language in the regulation. Isn't that fair? Well, actually, Your Honor, yes. But what I'm actually saying is that for the vagueness portion of it, all that needs to be done is it needs to be interpreted within, actually, the statute itself as constituting... creating a loud or unusual noise or a nuisance. And then the next section is otherwise impeding or disrupting the performance of official duties. So the word otherwise would seem to suggest that the previous sections also rise to the level, in order to be criminal, of impeding or disrupting the performance of official duties. So to salvage it from vagueness and borrowing, really, from the Supreme Court's analysis in Granite v. City of Rockford, what we're doing is we're saying you can interpret this statute. We're not challenging that it's vague in all of its applications. You can interpret it and apply it constitutionally to things that are clearly disruptive. Or you can show that specific conduct was disruptive. But in the application of this case, where a decibel level is not specified, where she doesn't speak any louder than the officers, where the officers can't agree what it is that she did wrong, can't agree which sounds were loud and which sounds were not loud, where she's told, after she asks, why am I being arrested, that she's being arrested for being a bitch or for disorderly conduct, and only after being detained for 20 minutes, when another officer comes over that gets to figure out what section of the statute she can actually be charged with, is she charged with this offense, it is vague in this application because it is arbitrarily and discriminatorily applied. The last point that I had, Your Honor, very, very briefly, is Irby. I just want to address this. On oral argument... You can take 30 seconds. 30 seconds. Yes, on oral argument, my adversary relies on Irby, and Irby is actually talked about in Strong itself. So if you look at the Strong decision, specifically on page 58 of that decision, it says the Fourth Circuit interpreted a different statute in Irby and held that the application of the rules was not preconditioned on conspicuous... I'm sorry. Excuse me. ...held the posting requirement was found in a different subsection of the regulation than that which described the substantive offense and a different subsection of the statute than that which gave the secretary authority to promulgate regulations. In other words, the difference in Irby, and this case, and Strong. Strong recognizes clearly in Section A that conspicuous posting or actual knowledge is required. Then Strong refuses to extend that to say that posting at the door, which is not contained in the enabling statute of the United States Code, but in a separate regulation, is not required for criminal liability. And it specifically distinguishes Irby or comes in play with Irby by saying Irby is a case where the court found, just as we find here, in that statute, different statute, the enabling statute did not require the conspicuous posting, and the regulation that did require that was a separate regulation. So it all fits together, and there is no circuit that has found otherwise. So... Thank you. Thank you, Your Honor. Thank you both. We will take the matter under advisement.